AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

District of Connecticut

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) Case No. | |
| | ) | 3:12mj 141 (NBF) |
| ALAN EMMETT BRADLEY | ) | |
| | ) | |
| *Defendant(s)* | | |

FILED
2012 MAY 18 P 1:59
U.S. DISTRICT COURT
BRIDGEPORT, CONN

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __1/1/08 and 3/8/12__ in the county of __Fairfield__ in the ____ District of __Connecticut__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. § 1347 | Health Care Fraud |

This criminal complaint is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Christina Cortright, Special Agent HHS-OIG
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __05/16/2012__

/s/
_____
*Judge's signature*

City and state: __Bridgeport, Connecticut__     Holly B. Fitzsimmons, U.S. Magistrate Judge
*Printed name and title*

STATE OF CONNECTICUT           :

                                                :  ss: BRIDGEPORT, CONNECTICUT

COUNTY OF FAIRFIELD            :  May 16, 2012

## AFFIDAVIT OF CHRISTINA CORTRIGHT

I, Christina Cortright being duly sworn, state as follows:

1. I am an Assistant Special Agent in Charge (ASAC) with the Office of the Inspector General of the United States Department of Health and Human Services (HHS-OIG). I am currently the supervisor of the Hartford, Connecticut Field Office. I have been employed as a Special Agent with HHS-OIG since June 2002. Before joining HHS-OIG, I was a licensed Physical Therapist for approximately six years.

2. As an ASAC with HHS-OIG, my duties include investigating violations of federal health care fraud statutes, including fraud involving public health care benefit programs, such as Medicare and Medicaid, and supervising such investigations. I have participated in numerous health care fraud investigations and participated in the execution of numerous search and arrest warrants. In the course of conducting investigations, I regularly analyze Medicare and Medicaid claims data to determine the existence of fraud, waste and abuse in these programs.

3. Along with Special Agents from the Federal Bureau of Investigation (FBI), I am investigating ALAN EMMETT BRADLEY (BRADLEY), a certified alcohol and drug abuse counselor, and his affiliated counseling practice, A.E. Bradley's Family Counseling, Coaching, Mentoring Ministry, LLC (hereafter referred to as "the practice"). Our agencies are investigating

1

allegations that BRADLEY is engaging in a health care fraud scheme involving the submission of fraudulent claims for individualized psychotherapy sessions. The fraudulent claims are for services that either were not provided, or were misrepresented as payable services.

4.     I submit this affidavit in support of a criminal complaint and arrest warrant for ALAN EMMETT BRADLEY, year of birth 1955, a resident of Norwalk, Connecticut, for violations of 18 U.S.C. § 1347 (health care fraud).

5.     This affidavit is based on our investigation and observations; information provided by other law enforcement officers, information obtained from cooperating witnesses and cooperating third parties; Medicaid records and claims data; and my experience and training.

6.     This affidavit does not contain all the information gathered to date. Rather, is sets forth sufficient information to establish probable cause to believe that ALAN EMMETT BRADLEY committed the federal crime alleged herein.

## I.     INTRODUCTION

**The Medicaid Program**

7.     The Connecticut Medicaid program is a joint federal-state program designed primarily to finance the provision of medical services to the indigent. It is administered in Connecticut by the Department of Social Services (DSS), and is also supervised by the federal Centers for Medicare and Medicaid Services (CMS).

8.     Medicaid pays claims submitted by participating health care providers for medical services rendered to Medicaid beneficiaries. As such, Medicaid constitutes a "health care benefit program" under 18 U.S.C. § 24(b).

9. BRADLEY is a participating provider with the Connecticut Medicaid program, National Provider Identifier XXXXXX0701, and he provides medical services to Medicaid eligible recipients. BRADLEY has been a participating provider in the Medicaid program since October 23, 2006. His provider number is XXXXX4165. On several enrollment and reenrollment documents submitted to DSS, including the most recent in 2011, BRADLEY certified that his practice is currently located at 9 Fair Street in Norwalk, Connecticut.

10. The Medicaid program pays BRADLEY for claims he submits to DSS for counseling sessions that he provides to Medicaid clients. BRADLEY submits claims to DSS electronically and most of his payments are electronically transferred to BRADLEY's bank accounts. BRADLEY does not use a billing company.

**Background**

11. According to Connecticut Department of Public Health records, BRADLEY became a Certified Alcohol and Drug Abuse Counselor (CADC) in Connecticut on September 12, 2006. BRADLEY's license number is 000523 and his license is active until August 31, 2012.

12. Connecticut General Statutes, Chapter 376b, section 20-74s (4) defines the "Practice of alcohol and drug counseling "as… the professional application of methods that assist an individual or group to develop an understanding of alcohol and drug dependency problems, define goals, and plan action reflecting the individual's or group's interest, abilities and needs as affected by alcohol and drug dependency problems."

13. According to the Health Program Supervisor at the Connecticut Department of Public Health, a CADC is only permitted to treat patients with substance abuse problems or addiction disorders. Such treatment may include seeing family members of the addicted individual to assist in treating that family member's substance abuse problem, but it would not include

3

treatment for any other condition or issue outside the realm of substance abuse. Any such treatment rendered by a CADC would be outside the CADC's scope of practice. Furthermore, a CADC is not permitted to diagnose patients; clients must come to a CADC with diagnoses from a licensed professional.

14. According to the State of Connecticut, Commercial Recording Division, BRADLEY registered A.E. BRADLEY'S FAMILY COUNSELING, COACHING, MENTORING MINISTRY, LLC, located at 9 Fair Street in Norwalk, Connecticut on November 8, 2010. BRADLEY is listed as both the principal and the agent. BRADLEY has also used other names including A.E. BRADLEY FAMILY COUNSELING, LIFE COACHING & MENTORING MINISTRY, LLC, Alan E. Bradley's Therapeutic Counseling, Coaching & Mentoring Ministry, Pastor Alan E. Bradley, LADC and B.A.S.I.C. HOUSE OUTREACH MINISTRIES, INC. to refer to his counseling practice at 9 Fair Street in Norwalk, Connecticut.

## II.    BRADLEY'S SCHEME TO DEFRAUD THE MEDICAID PROGRAM

15. Our investigation to date has revealed that there is probable cause to believe that on various dates from on or about January 1, 2008 to March 8, 2012, BRADLEY has knowingly and willfully engaged in a scheme or artifice to defraud the Connecticut Medicaid Program.

16. BRADLEY perpetrated this scheme by obtaining the Medicaid cards of various Medicaid clients and then either rendering a limited number of services to that client or rendering no services at all. BRADLEY would then use those Medicaid clients' cards to submit hundreds of claims to DSS for allegedly performing 75 to 80 minute face-to-face individual psychotherapy sessions to these Medicaid clients at his 9 Fair Street office in Norwalk, Connecticut.

17. BRADLEY did so knowing that he did not in fact render these services. In knowingly and willfully submitting these fraudulent claims to DSS for services that BRADLEY did not render, BRADLEY obtained, by means of false or fraudulent pretenses, representations, or promises, the money or property of the Medicaid program.

### III.   THE INVESTIGATION UNCOVERS BRADLEY'S CRIMINAL CONDUCT

18. On March 9, 2012 the FBI and HHS-OIG initiated an investigation into the alleged fraudulent activities of BRADLEY's counseling practice as identified in a DSS audit. The investigation revealed the following:

### A.   BILLING DSS FOR INDIVIDUAL COUNSELING SESSIONS ALLEGEDLY PERFORMED IN CONNECTICUT WHILE BRADLEY WAS ACTUALLY IN FLORIDA

19. BRADLEY and his wife, Deborah Bradley own a property located at 3465 Bromfield Drive in Ocoee, Florida.

20. In addition to many other flights to and from Florida, on January 31, 2012 at 3:59 p.m. BRADLEY flew on JetBlue Airways, flight number 595, from the Westchester County Airport in Westchester, New York to the Orlando International Airport in Orlando, Florida. On March 13, 2012 at 6:55 a.m., BRADLEY flew on JetBlue Airways, flight number 592, back to the Westchester County Airport in Westchester, New York from the Orlando International Airport in Orlando, Florida.

21. 3465 Bromfield Drive in Ocoee, Florida is approximately 30 miles northwest of the Orlando International Airport in Orlando, Florida.

22. BRADLEY is a member of the L.A. Fitness gym. Records from L.A. Fitness indicate that BRADLEY frequently works out at the L.A. Fitness center located on 1560 East Silver Star

Road in Ocoee, Florida. BRADLEY used the L.A. Fitness gym in Ocoee, Florida on the following dates: February 2, 2012, February 3, 2012, February 24, 2012, February 25, 2012, February 29, 2012, March 3, 2012, March 6, 2012, March 7, 2012 and March 8, 2012.

23. BRADLEY is the sole signatory on a Wells Fargo checking account (the account) titled, "A.E. Bradley Family Counseling." The account was opened on December 9, 2010. DSS currently pays BRADLEY for the claims he submits for services he allegedly rendered via electronic fund transfer to the account.

24. From January 31, 2012 to March 13, 2012, BRADLEY's Wells Fargo account was used to conduct numerous financial transactions at various locations in the Orlando, Florida area. For example, the account was used to make purchases at Winn-Dixie on February 6, 2012, February 10, 2012 and February 13, 2012. All of these transactions occurred in Orlando, Florida. The account was also used to make purchases at Wal-Mart on February 14, 2012, February 24, 2012 and February 28, 2012. All of these transactions occurred in Ocoee, Florida.

25. BRADLEY owns an "E-Pass" that he purchased from the Orlando-Orange County Expressway Authority. An "E-Pass" allows a motorist to pay tolls electronically as they pass through specially equipped toll lanes in Orange County, Florida. Records from the Orlando-Orange County Expressway Authority indicate that BRADLEY opened an "E-Pass" account on July 6, 2011 and registered a 2007 silver Chevrolet Monte Carlo with Florida license plate 476YKL.

26. These records further indicate that BRADLEY's "E-Pass" was used to pass through numerous Orange County, Florida highway toll stations on five (5) occasions from January 31, 2012 to March 13, 2012 (inclusive).

27. BRADLEY is currently enrolled as a full-time student in a Bachelor of Arts in Social

Services program at Belhaven University at its Orlando, Florida campus. He has been so enrolled since January 13, 2012 and has been taking classes there since February 13, 2012. BRADLEY attended classes, in person, on the Orlando, Florida campus, on the following dates: February 13, 2012, February 20, 2012, February 27, 2012, March 5, 2012 and March 12, 2012. On documentation from Belhaven University, BRADLEY listed his employment with A.E. Bradley Family Counseling as ending on January 5, 2012.

28. Despite being in the Orlando, Florida area from January 31, 2012 to March 13, 2012, BRADLEY billed DSS for allegedly rendering a total of one hundred and ninety-three (193) 75 to 80 minute face-to-face individual psychotherapy sessions to Medicaid patients at his 9 Fair Street office in Norwalk, Connecticut. DSS paid BRADLEY a total of approximately $16,984.00 for allegedly providing these services.

29. The place of service code is a two-digit code that indicates the setting in which a service was provided. Place of service code "11" indicates that the service was rendered in an office setting. The place of service codes for all one hundred and ninety-three (193) 75 to 80 minute face-to-face individual psychotherapy sessions that BRADLEY allegedly rendered from January 31, 2012 to March 13, 2012 is "11."

30. In addition to this particular extended stay in Florida from January 31, 2012 to March 13, 2012, our investigation has revealed that BRADLEY has flown down to Florida on at least three (3) other occasions since June of 2011 and appears to have stayed for days at a time. BRADLEY's presence in Florida on these dates has also been corroborated by L.A. Fitness check in times, financial records and/or E-Pass records.

31. Despite being in Florida for these three (3) additional extended time periods since June of 2011, BRADLEY continually billed DSS and was paid by DSS for allegedly rendering 75 to

80 minute face-to-face individual psychotherapy sessions at his 9 Fair Street office in Norwalk, Connecticut. During these three (3) trips to Florida, BRADLEY billed DSS and was paid by Medicaid for three hundred fifty-seven (357) claims for psychotherapy sessions for thirty-five (35) different clients, many of whom are his relatives. DSS paid BRADLEY a total of approximately $31,416.00 for allegedly rendering these services.

### B. BILLING DSS FOR PROVIDING INDIVIDUALIZED FACE-TO-FACE COUNSELING SESSIONS FOR SERVICES NOT RENDERED

32. I, as well as other law enforcement officers assisting in this investigation, have interviewed several cooperating witnesses regarding the services they allegedly received from BRADLEY.

33. Cooperating witness # 1 (CW #1) is a Medicaid beneficiary who resides Connecticut. CW # 1 stated that s/he saw BRADLEY for a total of approximately five (5) counseling sessions in the spring of 2011. CW # 1 advised that she does not have a substance abuse problem. These sessions were not in any way related to substance abuse counseling, but rather were for marriage counseling. Therefore, any marriage counseling services BRADLEY provided to CW # 1 would be outside the scope of a CADC's practice and therefore not reimbursable by Medicaid.

34. During the approximately five (5) times that CW # 1 did meet with BRADLEY, BRADLEY took handwritten notes or would type notes on a laptop computer.

35. CW # 1 has three (3) children. Two (2) of these children were approximately two (2) years old in the spring of 2011. According to CW # 1, BRADLEY never counseled his/her approximately two (2) year old children and they were never present for any of the times that s/he had a marriage counseling session with BRADLEY. None of the approximately five (5)

sessions occurred over the telephone.

36. CW # 1 reviewed the dates that BRADLEY billed DSS for having provided services to him/her and his/her children. CW # 1 stated that s/he knew that BRADLEY was in Florida during some of the time periods that he billed as if he had provided a service to him/her and his/her children.

37. A review of DSS claims data indicates that BRADLEY billed DSS and was paid by Medicaid for allegedly rendering a total of one hundred and eighty-nine (189) 75 to 80 minute face-to-face individual psychotherapy sessions to CW # 1 and his/her two (2) approximately two (2) year old children. These services were alleged to have taken place between March 21, 2011 and August 31, 2011. DSS paid BRADLEY a total of approximately $16,632.00 for allegedly providing these services.

38. When CW # 1 discovered the numerous dates that BRADLEY billed DSS for allegedly having provided a service to him/her and his/her children, CW # 1 confronted BRADLEY. BRADLEY told CW # 1 to say that the dates of service were legitimate.

39. Cooperating witness # 3 (CW # 3) is a Medicaid beneficiary who resides in Connecticut.

40. CW # 3 has one (1) son and two (2) daughters. All of CW # 3's children, who were approximately ages nine (9), five (5) and two (2) in the summer of 2010, have Medicaid as their insurance. Neither CW #3 nor his/her children have substance abuse problems.

41. In the summer of 2010, CW # 3 brought his/her son, approximately age nine (9), to BRADLEY for a counseling session. The counseling session was not in any way related to alcohol or substance abuse, but rather was to help CW #3's son cope with his father's recent incarceration. Therefore, any counseling services that BRADLEY provided to CW # 3's son would be outside the scope of a CADC's practice and therefore not reimbursable by Medicaid.

42. During the first visit with CW # 3, BRADLEY asked CW # 3 for his/her Medicaid card and the Medicaid cards for his/her son and two (2) daughters. CW # 3 gave these cards to BRADLEY. BRADLEY subsequently met with CW # 3's son a total of four (4) times. During these four (4) sessions, CW # 3 was present for two (2) of them and the other two (2) were just between BRADLEY and CW # 3's son. CW # 3 never met with BRADLEY for any individualized counseling. After the last counseling session with CW # 3's son, BRADLEY called CW # 3 on the telephone approximately once or twice a month. The calls lasted approximately ten (10) to fifteen (15) minutes and were just made to "check up on" CW # 3.

43. CW # 3 and his/her family lived at 9 Fair Street in Norwalk, Connecticut in the upstairs or downstairs apartment from approximately May 2011 to March 2012. During this time period, BRADLEY led "bible study" every Monday night and required CW # 3 to go to daily "devotions" for one (1) hour each morning. BRADLEY would also meet with CW # 3's family to discuss house rules, nutrition, chores and the like.

44. BRADLEY never once counseled CW # 3's two (2) daughters and never met with them alone.

45. Sometime before CW # 3 and his/her family moved out of 9 Fair Street in Norwalk, Connecticut, BRADLEY left for Florida to attend school for two (2) years.

46. A review of DSS claims data indicates that BRADLEY billed DSS and was paid by Medicaid for allegedly rendering a total of two hundred and ninety-four (294) 75 to 80 minute face-to-face individual psychotherapy sessions to CW # 3's young daughters from September 9, 2010 to March 8, 2012. DSS paid BRADLEY a total of approximately $25,872.00 for allegedly providing these services.

47. Even excluding the four (4) sessions that BRADLEY allegedly provided to CW # 3's

son (that were outside the scope of a CADC's practice), BRADLEY billed DSS for allegedly rendering hundreds of 75 to 80 minute face-to-face individual psychotherapy sessions to CW # 3 and his/her approximately nine (9) year old son. DSS paid BRADLEY approximately $25,000 for allegedly providing these services.

### C. BILLING DSS FOR PROVIDING INDIVIDUALIZED COUNSELING SESSIONS TO CHILDREN AGES 1 TO 3 YEARS OLD

48. A review of DSS claims data indicates that from September 9, 2010 through December 8, 2011, BRADLEY began billing DSS for allegedly rendering 75 to 80 minute face-to-face individual psychotherapy sessions (CPT code 90808) to children approximately ages one (1) through three (3) years old. During this time frame, BRADLEY billed CPT code 90808 on approximately six hundred and thirty-five (635) dates of service for eight (8) children, four (4) of whom are related to BRADLEY. DSS paid BRADLEY approximately $55,880.00 for allegedly providing these services.

49. A review of these claims and the corresponding diagnosis codes indicates that none of these children had their own substance abuse issues.

50. Given the intellectual capacity and language skills of children in this age range, it is highly unlikely that any individualized counseling, much less counseling for 75 to 80 minutes at a time, could possibly have occurred.

### Need for Sealing the Affidavit, Application, and Arrest Warrant

51. In my judgment, and based on my training and experience, the disclosure of this affidavit and accompanying documents at this time will jeopardize the government's ongoing investigation in the District of Connecticut and elsewhere. Premature disclosure of the contents of this affidavit could frustrate this investigation by alerting the subjects of the investigation to

the nature of the investigation, the techniques employed, and the evidence developed to date. Disclosure could also frustrate the investigation by limiting the use of the grand jury to develop further admissible evidence. Accordingly, it is respectfully requested that this affidavit and the accompanying documents be sealed until further order of the Court.

### IV. CONCLUSION

52. Based on the foregoing, there is probable cause to believe, and I do in fact believe, that between approximately January 1, 2008 to on or about March 8, 2012, in the District of Connecticut and elsewhere, ALAN EMMETT BRADLEY knowingly and willfully engaged in a scheme or artifice to defraud the Connecticut Medicaid Program in violation of 18 U.S.C. § 1347 (health care fraud).

*Christina Cortright S/A HHS016*
Christina Cortright
Special Agent
U.S. Department of Health and Human Services
Office of Inspector General

Subscribed and sworn to before me at Bridgeport, Connecticut, this 16th day of May, 2012.

/s/
United States Magistrate Judge
Holly B. Fitzsimmons